IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK SUBHER,<br><br>                *Plaintiff,*<br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>                *Defendants.* | CIVIL ACTION<br>NO. 22-0601 |

**PAPPERT, J.**                                                                                          December 9, 2022

### MEMORANDUM

      Mark Subher was attacked by other inmates while he was a pretrial detainee at Curran-Fromhold Correctional Facility. After his acquittal and release, he filed a civil action under 42 U.S.C. § 1983 against Detective Joseph Napolitan Josep for malicious prosecution and false arrest; Correctional Officer Wanda Murchinson and five unnamed correctional officers for failure to protect and deliberate indifference to a serious medical need; and Prison Commissioner Blanche Carney and the City of Philadelphia for supervisory liability stemming from inadequate staffing at CFCF. All named defendants moved to dismiss Subher's Third Amended Complaint, (ECF 22). After reviewing Defendants' Motion (ECF 25), Subher's Response (ECF 27) and Defendants' Reply (ECF 28), the Court denies the Motion with respect to the deliberate indifference to serious medical need claim against Correctional Officer Murchinson (Count IV) and grants it with respect to all other claims.[1]

---

[1]     Subher withdrew his negligence claim against the City of Philadelphia in his Response to Defendants' Motion to Dismiss. (ECF 27 at 13–14.)

I

In February of 2020, Garfield Hines was shot by an "unknown individual." (TAC ¶ 18.) He told Detective Joseph Napolitan Josep that a person driving a blue Ford station wagon dropped off the shooter, and that he believed the driver was "Eds" from his neighborhood. (*Id.*) Napolitan Josep identified "Eds" as Mark Subher, who, according to a database search, owned a blue Ford Crown Victoria. (TAC ¶ 20.) Based on this information, he obtained a warrant to search Subher's home. (TAC ¶¶ 22–23.) The only evidence discovered during the search was an insurance card corroborating Subher's ownership of the Crown Victoria. (TAC ¶ 24.) Subher was arrested and charged with "criminal attempt of murder, aggravated assault, conspiracy, possession of a firearm, firearms not to be carried without license, carrying firearms in Philadelphia publicly, possession of an instrument of crime with intent, simple assault, reckless endangerment, and terroristic threats." (TAC ¶ 32.) Ultimately, a jury acquitted Subher of all charges. (TAC ¶ 34.)

Subher was detained at CFCF while he awaited trial. (TAC ¶ 3.) During that time, prisons in Philadelphia, including CFCF, experienced severe, well-documented staffing shortages and an uptick in inmate violence. (TAC ¶¶ 35–36, 51–129.) On September 30, 2021, only one correctional officer, Wanda Murchinson, was assigned to Subher's "pod." (TAC ¶¶ 37–38.) She was simultaneously assigned to a second pod, and no correctional officer was assigned to monitor the surveillance cameras in the control room. (TAC ¶ 39.) Officer Murchinson unlocked the cells in Subher's pod and released the inmates into the common area. (TAC ¶ 40.) She then left the pod, allowing the inmates to roam the area unsupervised. (TAC ¶¶ 40–41.) Some time after

Murchinson left, Subher and several other inmates had a disagreement over use of the telephones. (TAC ¶ 42.) Subher walked away from the common area, and the others followed him back into his cell, where they punched and stabbed him repeatedly. (TAC ¶¶ 4, 42.) He tried to yell for help and pressed his cell's emergency call button multiple times during the attack, but no prison staff responded. (TAC ¶¶ 43–45.) It is unclear whether the emergency call buttons malfunctioned, or the officers heard Subher's pleas but ignored them. (*Id.*)

Subher's attackers left him on the floor of his cell with a dislocated shoulder and ten stab wounds to his arms and face. (TAC ¶¶ 46–48.) Murchinson and five other correctional officers noticed him in this state but ignored him; other inmates stepped in to try to stop the bleeding with tee shirts. (TAC ¶¶ 47, 148.) Subher does not say what Murchinson was doing while he lay bleeding on the floor, but he alleges that the five other unidentified correctional officers continued to distribute meals after they saw his injuries. (TAC ¶ 47.) Two hours after they first saw Subher's wounds, prison staff finally brought him to the medical unit for treatment. (TAC ¶¶ 47, 148.)

II

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the plaintiff's complaint. A district court must conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, it must accept the plaintiff's well-pleaded factual allegations as true but may disregard mere legal conclusions. *Id.* Second, it must determine whether the well-pleaded facts, taken as true, show that the plaintiff is entitled to relief. *Id.* Factual allegations that

"do not permit the court to infer more than the mere possibility of misconduct" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III

In Counts I and II, Subher alleges § 1983 malicious prosecution and false arrest claims against Detective Napolitan Josep. (TAC ¶¶ 130–40.) To establish malicious prosecution, a plaintiff must show "(1) the defendant[ ] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (quotation omitted) (cleaned up). False arrest requires (1) an arrest (2) that was made without probable cause. *Id.* at 199.

Napolitan Josep challenges only the probable cause prong of each claim. (Mot. to Dism., ECF 25 at 8–10.) "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). A victim's identification of the perpetrator may—but does not necessarily—establish probable cause. *See Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000). The context of the identification is critical: "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist." *Id.*

Subher alleges that the shooting victim identified the person who dropped off the shooter as "Eds" and said he was driving a "blue Ford station wagon." (TAC ¶ 18.) Napolitan Josep obtained a search warrant for Subher's home after identifying Subher as "Eds" and verifying that he owned a blue Ford Crown Victoria. (TAC ¶¶ 21–22.) The search revealed an insurance card corroborating Subher's ownership of the blue Ford Crown Victoria. (TAC ¶ 24.) Subher suggests that the scant evidence recovered in the search would defeat probable cause. (TAC ¶¶ 26–28.) In doing so, he incorrectly equates the absence of incriminating evidence with exculpatory evidence. He also faults the Detective for failing to interview him about an alibi or ask Hines questions to test the reliability of the identification. (TAC ¶¶ 19, 31.) However, Subher must—yet does not—allege that Napolitan Josep was *aware* of exculpatory evidence or facts suggesting that Hines's identification was unreliable. He thus fails to allege sufficient facts to show a lack of probable cause, as required for both malicious prosecution and false arrest.

IV

A

Subher claims that Correctional Officer Murchinson failed to protect him from the attack (Count III) and was deliberately indifferent to his need for medical attention in its aftermath (Count IV), in violation of § 1983.² "Prison officials have a duty to

---

²      Subher was a pretrial detainee at the time of the alleged attack, so his claims are governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment protections applicable to convicted prisoners' claims. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014). The Fourteenth Amendment's protections for pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation omitted) (cleaned up).  To state a failure to protect claim under § 1983, Subher must show that (1) "he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk . . . , and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020).  Deliberate indifference requires a plaintiff to allege facts showing that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Actual knowledge can exist where "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 842–43).

Subher does not claim that Murchinson knew the attackers threatened him before, *see Bistrian*, 696 F.3d at 368–69, nor that he was particularly vulnerable to attacks, *see Farmer*, 511 U.S. at 831, nor that his attackers had a propensity for violence toward other inmates, *see Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005).  In his Third Amended Complaint, Subher points to other instances of inmate-on-inmate violence allegedly caused by insufficient supervision in Philadelphia prisons.  *See* (TAC ¶¶ 57, 103, 106, 127–29).  But only the attack on "Unknown Inmate #2"—which

occurred on the same day as the attack on Subher[3] and therefore does not suggest a "longstanding" risk—seems to have involved unsupervised inmates out of their cells. The other attacks were perpetrated by cellmates, and the news reports and statements Subher cites generally attribute the uptick in violence to restlessness caused by inadequate out-of-cell time when prisons are short-staffed. These incidents are not sufficiently similar to Subher's attack to show that Murchinson knew letting inmates in Subher's pod mingle unsupervised in the common area would create an excessive risk of violence. *See Bracey v. Pa. Dep't of Corrs.*, 571 F. App'x 75, 78–79 (3d Cir. 2014) (nine exercise yard attacks in two years did not give prison officers actual knowledge of risk where the attacks on the plaintiff involved circumstances not present in the other incidents).

To the extent the claim is premised on the correctional officers' failure to respond to the emergency call button, Subher acknowledged in his Complaint that the button may not have been working, (TAC ¶ 44), so he has not sufficiently pleaded that the correctional officers knew he was being attacked.

B

To survive a motion to dismiss Count IV, Subher must show that Murchinson was (1) deliberately indifferent to his (2) serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A medical need is "serious" if it has been diagnosed by a physician or is so obvious that a lay person would easily recognize the necessity of medical attention. *Palakovic v. Wetzel*, 854 F.3d 209, 227 n.23 (3d Cir. 2017).

---

[3]   It is not clear to the Court that "Unknown Inmate #2" is not Subher himself.

Deliberate indifference may be found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Subher states that his stab wounds were bleeding so profusely during the two hours after the attack that other inmates had to use tee shirts to try to stop it. (TAC ¶¶ 4, 47.) The allegation that other inmates recognized the need for treatment is sufficient to plead that the serious medical need was "obvious." Subher's allegation that Murchinson "discover[ed]" him in that state but delayed medical treatment for two hours is enough to state a deliberate indifference claim at this stage of the litigation. *Cf. Bennett v. Washington*, No. 11-176, 2015 WL 731227, at *7 (E.D. Pa. Feb. 19, 2015) (at summary judgment, drawing inference in plaintiff's favor that a correctional officer who saw inmate's stab wound—which was bleeding, though not profusely—would necessarily understand medical attention was needed).

V

Counts V and VI of the Third Amended Complaint assert § 1983 claims against Prison Commissioner Blanche Carney and the City of Philadelphia, respectively, for the alleged policy, practice or custom of failing to adequately staff prisons. (TAC ¶¶ 150–65.)

A supervisor or municipality cannot be held vicariously liable under § 1983 for acts of an employee or agent; rather, "[t]here must be a 'direct causal link between a

municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *Monell v. Dep't Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "To establish the necessary causation, a plaintiff must demonstrate a plausible nexus or affirmative link between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (quotations omitted).

The causal link between the alleged understaffing and Subher's medical indifference claim is too "tenuous" to support his claims. *Id.* at 851. Subher alleges that the correctional officers noticed his injuries but did nothing about them, not that staff was not available to notice or procure treatment for Subher's wounds. *See Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (plaintiff failed to allege causal link between understaffing and inadequate care provided by nursing home staff). Without the causal link, Carney and the City cannot be liable under § 1983 for the correctional officers' unconstitutional acts.

## VI

Subher has now amended his original Complaint three times and does not seek leave to do so again. At this point, further amendment would be futile. *See Andela v. Am. Assn'n Cancer Rsch.*, 389 F. App'x 137, 142 (3d Cir. 2010) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)); Fed. R. Civ. P. 15(a)(2).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.